Pulaski State Bank, Appellant, vs. Kadziszak and another, Respondents.

*February 9—April 3, 1923.*

*Banks: Cashier closing real-estate deal: Whether acting on behalf of bank: Representations: Holder in due course: Evidence: Omitted finding: Presumption.*

1. Evidence that the cashier of a bank which had approved an application for a loan made by a purchaser of land called with the vendor at the home of the purchaser and stated that the abstract would correspond to the deed, and that the cashier was instructed by the purchaser not to turn over the money to the vendor until the abstract was continued, and that afterwards he examined the abstract and said everything seemed to appear the way the parties had agreed upon, was sufficient to allow the jury to find that the cashier, in behalf of the bank, represented that the title was good in the vendor, and that the purchaser relied upon this representation.

2. Where the cashier at the time of accepting notes given in the deal knew that the vendor had no title, the bank took the notes with full knowledge of their infirmity and was not a holder in due course, under sec. 1676—22, Stats.

3. Under sec. 2858m, Stats., a necessary finding on a particular issue which has not been submitted to the jury is presumed to have been supplied by the court where the evidence is substantially without dispute.

   Owen, J., and Vinje, C. J., dissent.

APPEAL from a judgment of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge. *Affirmed.*

The defendant *Mary Kadziszak* and her husband lived on a farm two and a half or three miles from Pulaski, Wisconsin. In December, 1919, they desired to purchase an adjoining piece of land which had been owned by one Michael Jagodzinski, but who had died and left the property subject to certain incumbrances. One Joseph Dominiczak claimed to be the owner of the property, and negotiated with the defendant *Mary Kadziszak* and her husband through their son, the defendant *M. J. Kadziszak,* then a minor, with a view of purchasing the property. *M. J. Kadziszak* applied to the *Pulaski State Bank,* the plaintiff, for a loan of $800 in case the deal should go through. Shortly thereafter, and on the 29th of December, 1919, Joseph Dominiczak and Frank Szczechowski, who was cashier of the *Pulaski State Bank,* came out to the farm of *Mary Kadziszak* and her husband about 8 o'clock in the evening, and Dominiczak sought to sell the place and close the deal. *Mary Kadziszak* and her husband were illiterate and could not speak nor read the English language. Negotiations took place in the Polish language, they all being of that nationality. *Mary Kadziszak* and her husband had been doing business with the *Pulaski State Bank* for a number of years, knew the cashier well, and knew that he was cashier at that time. The deal was finally concluded after some two or three hours' negotiations, and Dominiczak made a conveyance of the property in form to *Mary Kadziszak* and her husband, whereby the grantees assumed certain obligations against the property and executed two promissory notes for $400 each to the *Pulaski State Bank,* for the use and benefit of Dominiczak, and to be credited to him by the bank upon delivery to the bank of the abstract of title showing good title in Dominiczak. The acknowledgment to the deed was taken by the cashier,

Szczechowski, who was a notary public. Thereafter abstract was furnished to the bank, and the bank credited Dominiczak for the amount thereof, and turned the abstract over to *M. J. Kadziszak* for his mother and father. The husband of *Mary Kadziszak* died shortly thereafter, and the notes were afterwards renewed by *Mary Kadziszak* and signed by the son, *M. J. Kadziszak*. It turned out, after the notes were renewed, that Dominiczak had no title to the property, and the defendants refused to pay the note. The plaintiff bank brought action to recover on the note. The defendants admitted the execution of the note but alleged failure of consideration; that the bank had knowledge thereof at the time it took the original notes and the renewal thereof; that Dominiczak committed a fraud in the sale of the property, and that the bank, through its cashier, was a party thereto and had knowledge thereof. The case was submitted to a jury on a special verdict, and the jury found that the cashier, Frank Szczechowski, represented to the defendants that Dominiczak had good title to the farm in question, subject to certain incumbrances, and the *Pulaski State Bank* would stand back of it; that *Mary Kadziszak* relied upon such representations and was induced by reason thereof to execute the note in question; that she was not guilty of any want of ordinary care in so doing; that Frank Szczechowski was acting for and on behalf of the plaintiff bank and within the scope of his authority as cashier of said bank, and that the bank received for the cashier's services to the defendant *Mary Kadziszak* and her husband $15. Judgment was entered on the verdict for the defendants, and plaintiff appeals and assigns as errors that there was no jury question in the case; no credible evidence to sustain the special verdict; no evidence that Szczechowski was acting for the bank; that the uncontradicted evidence shows that he was not acting within the scope of his authority, and that the uncontradicted

evidence shows that Szczechowski and not the bank received the $15.

*John W. Reynolds* of Green Bay, for the appellant.

For the respondents there was a brief by *Lehner & Lehner* of Oconto Falls, attorneys, and *Otto P. Lehner* of Madison, of counsel, and oral argument by *Otto P. Lehner*.

CROWNHART, J.   The answers in the special verdict are amply supported by the evidence, unless it be the conclusion of law as to whether the cashier was acting for the bank and within the scope of his authority at the time the sale of the property was made to the defendant *Mary Kadziszak* and her husband.   The cashier claimed in his testimony that he went out to the farm of the *Kadziszaks* simply to act as notary public for Dominiczak, but it appears without controversy that Dominiczak paid him $15, and that *M. J. Kadziszak,* for his father and mother, also paid the cashier $15, which payment was made over the counter of the bank the next day.   Thus it will be seen that the cashier received $30 for going out to the farm, two and a half or three miles from Pulaski, with Dominiczak to act as notary public, as he claims. There does not appear from his statement to have been any necessity for his going out there for that purpose, as he could have taken the acknowledgment of the deed at the bank as well as at the farm.   There clearly appears to have been another purpose on the part of Szczechowski in going out to the farm, and that purpose fairly appears from the evidence.   The bank had been asked for a loan, and through its committee had approved a loan to be made to the *Kadziszaks* to purchase this farm.   The cashier knew this, and may well have been presumed to have assisted in carrying out the deal and making the loan in behalf of the bank.   Certainly the *Kadziszaks* had a right to believe that he represented the bank and that they could depend upon his word that the title to the property was in Dominiczak. More

than this, it appears fairly clear from Szczechowski's own evidence that he was not to turn over the money to Dominiczak until an abstract had been delivered to him showing that the title was good. He testified:

"Dominiczak came to my house about 8:30 and came to my residence and asked me if I could not take my notary seal and go out and close that Kadziszak deal up. I told him that I did not care to go out that time or go out that night as it was storming and told them to come to the bank. I went out there anyway and got $30 for my services, but never represented *Kadziszaks* personally in this deal and never told *Mrs. Kadziszak* that the *Pulaski State Bank* would stand back of the deal. I told her that the abstract would correspond to the deed, and they told me not to turn over the money to Joseph Dominiczak until the abstract was continued to date, and after the abstract was returned I looked it over to see whether the same obligations were on there as they agreed at the house, that is, the support of the minor children and the mortgage to support the minor children and the $900 and to the State Bank of Seymour, and after I looked over the abstract and found these obligations as set forth as they agreed upon I told *Mike Kadziszak,* who was acting for them, that everything seemed to appear the same way, as they agreed upon, and he said all right, turn over the money, and I turned over the money, but until then I did not turn over no money."

From this testimony alone the jury had a right to infer that Szczechowski, representing the bank, did pass upon the title and did represent that the title in Dominiczak was good, and that the *Kadziszaks* relied upon such representations and authorized him to turn over the money. As a matter of fact the abstract showed that Dominiczak had no title, and that he and Szczechowski misrepresented the facts with reference thereto. There was an utter failure of consideration for the notes. It was the duty of the cashier not to turn over the money until the abstract showed good title. The abstract showed no title in Dominiczak, the cashier knew that Dominiczak had no title, and thus the

bank took the notes with full knowledge of their infirmity. The bank was not a holder in due course, for the reason that at the time the note was negotiated to it, it had notice of the infirmity in the instrument.   Sec. 1676—22, Stats.

The question of the bank's notice of the failure of consideration for the note was not submitted to the jury, but the evidence is substantially without dispute on that point, to the effect that the cashier did have such knowledge, and in turning over the money to Dominiczak and accepting the note he was acting for the bank.   In such a case the necessary finding is presumed to have been supplied by the trial court in granting judgment.   Sec. 2858m, Stats.

The judgment of the circuit court should be affirmed, both on the findings of the jury and trial court and pursuant to sec. 3072m, Stats.

*By the Court.*—The judgment of the circuit court is affirmed.


Owen, J. (*dissenting*).   Although the bank loaned and actually parted with $800, the face of the note, it is held that there was no consideration for the note.   It is perhaps a confession of obtuseness, but candor compels me to say that the logic by which this conclusion is reached is too obscure for my comprehension.

Whatever may have been the delinquency of the cashier, there can be no doubt that the bank exchanged $800 for the *Kadziszak* note.   This certainly constituted full consideration for the note, and I am utterly unable to understand how it can be said that the note was procured by fraud under such circumstances.   That the defendants were defrauded by Dominiczak is plain enough, but that was a separate and independent transaction.   Granting that the cashier of the bank not only knew of that fraud but contributed to its consummation, and granting further that his participation in the fraud was imputable to and constituted the action of the bank, there is still a hiatus in the logic

by which it is held that such fraud taints the transaction whereby the bank loaned $800 to the defendants.   If there is any liability here on the part of the bank, it must be due to a breach of duty owing by it to the defendants in failing to discover the absence of Dominiczak's title to the land which he was selling to the defendants.   That constituted an independent liability which should have been pleaded as a counterclaim.   It did not constitute a defense to the action on the note.   Whether the defendants were entitled to recover on such a cause of action presents numerous robust questions which were neither litigated nor argued.   One question is whether it is within the power of a bank to assume to pass upon abstracts of title, thereby subjecting it to liabilities quite foreign to the banking business.   It may be remarked that if banks may assume such liabilities the question of their solvency becomes a rather elusive subject. Certainly it does not tend to increase the security of the depositors, a matter which has been a subject of consistent legislative concern for many years.   Furthermore, there is no evidence in this case to the effect that the bank assumed to examine this abstract for the purpose of ascertaining whether Dominiczak had title.   The evidence of the cashier, set forth in the opinion, affords no foundation for such a conclusion.   According to his testimony he was to ascertain merely whether two incumbrances specifically mentioned in the negotiations at the house when he was present were as represented.   In my judgment there is an entire lack of evidence to show that in the participation of the cashier in the transaction between Dominiczak and the *Kadziszaks* he was representing the bank.   It is said that he was paid $15 over the bank's counter.   That is no evidence that he was acting for the bank or that the bank ever became the beneficiary of said payment.   He was paid over the counter because that was where he happened to be at the time the payment was made.   It is said in the opinion that "certainly the *Kadziszaks* had a right to believe that he represented

the bank and that they could depend upon his word that the title to the property was in Dominiczak." The question is not what the *Kadziszaks* had a right to believe, unless such belief was predicated on the conduct of the bank apart from the mere representations of the cashier. The question is whether he in fact represented the bank, or whether the bank, by its own conduct, is estopped to deny it. In my judgment it is rather dangerous to hold a bank responsible for the individual transactions of its cashier which from their very nature are entirely without the scope of his duties, not conducted upon the premises of the bank and having no relations with the bank's business.

For the reasons thus briefly stated I must dissent.

I am authorized to state that Mr. Chief Justice VINJE concurs in this opinion.